UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD MICHAEL KETCHENS,

      Petitioner,                       Case No. 24-cv-11388
                                         Hon. Matthew F. Leitman

v.

RANDEE REWERTS,

      Respondent.

_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Petitioner Leonard Michael Ketchens is a former state inmate who is now on parole supervision through the Kent County Parole Office in Grand Rapids, Michigan. On May 24, 2024, Ketchens filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (See Pet., ECF No. 1.) In the petition, Ketchens seeks relief from his conviction for first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1)(b).

The Court has carefully reviewed the petition, and for the reasons explained below, it **DENIES** the petition and **DENIES** Ketchens a certificate of appealability. However, it **GRANTS** him leave to appeal *in forma pauperis*.

1

# I

## A

Ketchens' state-court criminal case had an unusual procedural history. Ketchens was charged with first-degree criminal sexual conduct involving a victim who was between 13 and 16 years old at the time of the alleged offense under Mich. Comp. Laws § 750.520b(1)(b). A person can violate that statute in one of four ways:

> (*i*) The actor is a member of the same household as the victim.
>
> (*ii*) The actor is related to the victim by blood or affinity to the fourth degree.
>
> (*iii*) The actor is in a position of authority over the victim and used this authority to coerce the victim to submit.
>
> (*iv*) The actor is a teacher, substitute teacher, or administrator of the public school, nonpublic school, school district, or intermediate school district in which that other person is enrolled.

Mich. Comp. Laws § 750.520b(1)(b)(i)-(iv). The victim was the biological son of Ketchens' adopted son. The prosecution's initial theory, as reflected both in the criminal information and at the start of trial, was that Ketchens violated the statute because he was "related to the victim by blood or affinity to the fourth degree." (04/01/2019 Trial Tr., ECF No. 9-3, PageID.153.)

On the second day of trial, after the victim's mother testified, the prosecution moved to file an amended information against Ketchens. (*See* 04/02/20219 Trial Tr.,

ECF No. 9-4, PageID.359.)  The prosecution sought to amend the information to add that Ketchens violated the statute because he was "member of the same household as the victim" and/or that he was "in a position of authority over the victim and used this authority to coerce the victim to submit." (*Id.*)  Ketchens' trial counsel objected. He argued that allowing that amendment would be akin to allowing the prosecution to "change somewhat [] the theory of the case," and he insisted that if the prosecution had pursued those theories from the beginning of the case, then he would have approached his opening statement and witness examination differently:

> Typically, [criminal charges are] amended for somewhat correcting a date or things like that.  This is actually changing somewhat of the theory of the case. In terms of that, we aren't even aware of whether the statute – CSC statute in 2000, how it specifically read as it relates to this.
>
> In fact, when we got the Information in the complaint, you know, we prepared our defense as it relates to how the criminal statute was charged and so that was how that's – we really didn't even make in our opening statement much about coerced the victim to submit by exercising his or her authoritative position.  We didn't really argue that. I would have really hit on that hard about that in opening, and members of the same household, I likewise would have argued that, and with the last witness I would have asked her about the household relationship and the like.
>
> We now are kind of backtracking to try to get ourselves through that.  Usually I don't – I don't nitpick with the prosecutor.  I mean, this is a fluid process.  We recognize that. Jurors, defense lawyers, Judges, everybody is in this together in terms of getting through it, but this is an extremely critical point because we were focusing on the actual relationship issues as it was pled both in the

3

> complaint and the first amended complaint. Now we've got some other areas that they're asking us to defend our client on, which expands the exposure to not just the relationship, the fourth degree, but the coercion part exerting his or her authoritave (ph) position, and then whether they were in the same household.
>
> So, as it relates to undue surprise, I mean, we're in the middle of a trial, would I have approached it differently? I think I would have, at least in regards to those two aspects. I would have maybe read the law a little more carefully, I would have prepared a little differently and maybe done my cross a little differently, but at the same time this is their case, they charged it as they wanted to, as they believe it was appropriate, and when we started to raise the issue of the – of the relationship, the affinity, I think they realized that they needed an alternative.

(*Id.*, PageID.360-362.)

The state trial court ultimately allowed the prosecution to amend the information. However, the trial court also allowed Ketchens' counsel to mitigate the two forms of prejudice that counsel identified in his objection. As explained above, counsel said that if the prosecution had pursued the new theories from the start of the case, then he would have "done [his] cross" of the victim's mother "a little differently" and would have addressed the new theories in his opening statement. (*Id.*) Responding to those two identified forms of prejudice, the trial court allowed Ketchens' counsel to (1) recall the victim's mother to ask her additional questions about the prosecution's new theories and (2) provide a supplemental opening statement to the jury to address those theories. (*See id.*, PageID.364-365.)

4

At the conclusion of the trial, the jury found Ketchens guilty of first-degree criminal sexual conduct. Ketchens then filed post-trial motions related to the prosecution's amendment of the information during trial, and the state trial court denied the motions. (*See* ECF Nos. 9-7, 9-9, 9-15.) The Court then sentenced Ketchens to 6 to 20 years in prison.[1] (*See* 06/29/2019 Tr., ECF No. 9-11.)

**B**

On May 24, 2024, Ketchens filed a petition for a writ of habeas corpus in this Court. (*See* Pet., ECF No. 1.) Respondent initially filed a motion to dismiss the petition on the ground that it was barred by the statute of limitations found in 28 U.S.C. § 2244(d)(1). (*See* Mot., ECF No. 8.) The Court denied that motion in a written order on April 8, 2025. (*See* Order, ECF No. 13.)

In the petition, Ketchens seeks relief on the following grounds: (1) he was charged and convicted under the first-degree criminal sexual conduct statute even though there was no evidence of blood or affinity between Ketchens and the victim, (2) the state trial court violated his right to due process when it allowed the information to be amended during trial to add two new theories for the commission of the charged crime, and (3) Michigan's Sex Offender Registration Act is being

---

[1] The procedural history for Ketchens' direct appeal and post-conviction motions and appeals was recited at length by this Court in its order dated April 8, 2025. *See Ketchens v. Rewerts*, 2025 WL 1062466, at * 1-2 (E.D. Mich. Apr. 8, 2025). The Court incorporates that history here.

5

applied retroactively to him in violation of the *ex post facto* clause. In his reply brief, Ketchens conceded that he cannot seek habeas relief on his third claim because he is a member of a class in a class action lawsuit in this Court challenging several provisions of Michigan's Sex Offender Registration Act. *See Does v Whitmer*, 751 F.Supp.3d 761 (E.D. Mich. 2024). As such, Ketchens concedes that his third claim is now moot. (*See* Reply, ECF No. 21, PageID.1411). The Court will therefore address only his first two claims.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

### A

The Court begins with Ketchens' claim that the state trial court violated his right to due process when it allowed the prosecution to amend the information on the second day of trial to add two additional theories of the charged crime. Ketchens raised this claim in his motion for new trial filed in the state trial court, and the trial court rejected it. (*See* St. Ct. Mot., ECF Nos. 9-7; St. Ct. Order, 9-15.) Ketchens has not shown that the state court's denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law. Indeed, Ketchens has not cited any case from the United States Supreme Court concerning the timing or amendment of state criminal charges.

Moreover, Ketchens has failed to show that the state court unreasonably concluded that he was not prejudiced by the amendment of the charges against him. As explained above, the state trial court mitigated the two forms of prejudice that Ketchens' trial counsel identified in opposition to the prosecution's motion to amend by granting counsel the opportunity to (1) recall the victim's mother to ask her additional questions related to the new theories included in the amended information and (2) provide a supplemental opening statement to the jury addressing the amendment. Thus, the rejection of this claim was not clearly unreasonable given

that the state trial court remedied the potential prejudice identified by Ketchens' counsel.

Finally, the amendment to the information – which only concerned Ketchens' relationship to the victim – did not undermine Ketchens' primary defense at trial, namely that there was insufficient evidence that he sexually assaulted the victim at all. For example, during opening statements, Ketchens' counsel told the jury that "we don't agree that anything happened" and "nor do we agree that there was any touching and we believe that once you listen to the witnesses you will agree that what we're saying is true." (04/01/2019 Trial Tr., ECF No. 9-3, PageID.293.) Counsel also argued that there was no evidence from the time the alleged assaults took place to "corroborate" that the assaults ever actually happened. (*Id.*, PageID.292.) Likewise, during closing arguments, Ketchens' counsel again focused primarily on the victim's lack of credibility, the lack of evidence that there was ever any "physical contact" between Ketchens and the victim, and the fact that the prosecution failed to present "a single corroborating witness" to support the victim's allegations. (04/03/2019 Trial Tr., ECF No. 9-5, PageID.610-613.) And Ketchens has not sufficiently explained how the amendment to the charges would have changed his approach to that primary defense. For all of these reasons, Ketchens has not shown an entitlement to relief on this claim.

B

Ketchens next argues that he was convicted under the first-degree criminal sexual conduct statute even though there was insufficient evidence of a blood or affinity relationship between himself and the victim. Ketchens raised this claim in his renewed motion for judgment of acquittal and motion for relief from judgment that he filed in the state trial court, and the state trial court rejected it. (*See* St. Ct. Mots., ECF No. 9-8, 9-17; St. Ct. Orders, ECF No. 9-15, 9-21.) Ketchens has not shown that the state court's denial of relief on this claim was contrary to, or unreasonably applied, clearly established federal law.

Ketchens' claim fails because even if there was insufficient evidence that Ketchens and the victim were related by blood or affinity in the fourth degree, that does not mean that there was insufficient evidence to support his conviction. As explained above, under Mich. Comp. Laws § 750.520b(1)(b), a person is guilty of criminal sexual conduct in the first degree if the actor engages in sexual penetration with another person that is at least 13 but less than 16 years of age and any of the following circumstances exist: (i) the actor is a member of the same household as the victim, (ii) the actor is related to the victim by blood or affinity to the fourth degree or (iii) the actor is in a position of authority over the victim and used this authority to coerce the victim to submit. The jury was instructed in Ketchens' case that they could find him guilty under any of these three theories. (*See* 04/03/2019

Trial Tr., ECF No. 9-5, PageID.636.) And "[t]he general rule is that when a jury returns a guilty verdict on an indictment [or information] charging several acts in the conjunctive…the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Turner v. United States*, 396 U.S. 398, 420 (1970). *See also Griffin v. United States*, 502 U.S. 46 (1991).

Here, Ketchens has not challenged the sufficiency of the evidence that he and the victim were part of the same household and/or that he was in a position of authority over the victim and used that position to coerce the victim into submitting to the sexual assaults. Thus, because the jury could have convicted Ketchens based on either of those theories, and because he presents no argument that the evidence on those theories was insufficient, he cannot show that the state trial court's rejection of this claim was unreasonable. Ketchens is therefore not entitled to habeas relief on his insufficiency of evidence claim.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that

10

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court **DENIES** Ketchens a certificate of appealability because jurists of reason could not debate the Court's conclusion that Ketchens failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Ketchens a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). Although jurists of reason would not debate this Court's resolution of Ketchens' claims, an appeal could be taken in good faith. Therefore, Ketchens may *proceed in forma pauperis* on appeal.

## V

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

- Ketchens' petition for writ of habeas corpus (ECF No. 1) is **DENIED**;
- A certificate of appealability is **DENIED**; and

- Leave to proceed *in forma pauperis* on appeal is **GRANTED** because an appeal could be taken in good faith.

**IT IS SO ORDERED**.

                                           s/Matthew F. Leitman
                                           MATTHEW F. LEITMAN
                                           UNITED STATES DISTRICT JUDGE

Dated: October 16, 2025

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 16, 2025, by electronic means and/or ordinary mail.

                                           s/Holly A. Ryan
                                           Case Manager
                                           (313) 234-5126